IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

FRANK GILLIS,                          :
                                       :
              Plaintiff                :
                                       :        CASE NO. 5:22-CV-00027-TES-CHW
         VS.                           :
                                       :
WARDEN TAMARSHE SMITH,                 :
DEPUTY WARDEN McKENZIE,                :
UNIT MANAGER McKELLER,                 :
COUNSELOR JEFFERIES,                   :
DR. KENNETH COWENS,                    :
NP LARRY HELMSLEY,                     :
NURSE DEBORAH TYMES,                   :
NURSE MAXIE,[1]                        :
                                       :        PROCEEDINGS UNDER 42 U.S.C. §1983
              Defendants               :        BEFORE THE U. S. MAGISTRATE JUDGE
_____

## ORDER AND RECOMMENDATION

This case is currently before the United States Magistrate Judge for screening as required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a). *Pro se* Plaintiff Frank Gillis, an inmate at the Macon State Prison in Oglethorpe, Georgia, filed a civil rights complaint (ECF No. 1) and an amended complaint (ECF No 5) pursuant to 42 U.S.C. § 1983. The Court ordered the Plaintiff to recast his complaint. ECF No. 8. Plaintiff has filed his recast complaint. ECF No. 11. Plaintiff also filed a motions for leave

---

[1] Plaintiff has amended his complaint. ECF No. 11. In his amended complaint, Plaintiff does not name Unit Manager Jackson as a Defendant. *Id*. at 4. Plaintiff adds Nurse Maxie as a Defendant. *Id*. Therefore, the Clerk's office is **DIRECTED** to terminate Unit Manager Jackson as a Defendant and to add Nurse Maxie as a Defendant. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007) (citations omitted) (noting that an amended complaint generally supersedes an original complaint.

to proceed *in forma pauperis*.  ECF Nos. 2 and 6.  Plaintiff's motions for leave to proceed *in forma pauperis* are **GRANTED** as outlined below.  Because Plaintiff is permitted to proceed without prepayment of the filing fee, Plaintiff's motion for help with filing fee (ECF No. 12) and motion for order to pay the filing fee (ECF No. 13) are **DENIED** as moot.  Lastly, Plaintiff's request for the appointment of an attorney (ECF No. 15) is **DENIED** as explained below.

Plaintiff's complaint is now ripe for preliminary review.  On preliminary review, Plaintiff's due process and conditions of confinement claims against Defendant Smith shall proceed for further factual development.  It is **RECOMMENDED**, however, that Plaintiff's deliberate indifference to a serious medical need and retaliation claim against Defendant Smith be **DISMISSED without prejudice.** It is further **RECOMMENDED** that Plaintiff's claims as to Defendants Cowens, Helmsley, Tymes, Maxie, McKenzie, McKellar, and Jefferies be **DISMISSED without prejudice.**  It is also **RECOMMENDED** that Plaintiff's request for preliminary injunctive relief (ECF No. 10) be **DENIED**.

## MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a).  ECF Nos. 2 and 6.  As it appears Plaintiff is unable to pay the cost of commencing this action[2], his application to proceed *in forma*

---

[2] Plaintiff's account statement indicates that he received a "stimulus payment" in the amount of $1400.  ECF No. 6 at 4 and 5.  However, those funds have not been generally released to the incarcerated within the Georgia Department of Corrections for personal use.  *See e.g.* https://www.gpb.org/news/2021/02/06/stimulus-debit-cards-unusable-for-prison-inmates-in-at-

*pauperis* is hereby **GRANTED**.  However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee.  28 U.S.C. § 1915(b)(1).  If the prisoner has sufficient assets, he must pay the filing fee in a lump sum.  If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available.  Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee.  28 U.S.C. § 1915(b)(4).  In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee.  Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

I.      Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee.  The clerk of court is **DIRECTED** to send a copy of this Order to the facility in which the Plaintiff is housed.  It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full.  28 U.S.C. § 1915(b)(2).  In accordance

---

least-four-states.  Plaintiff's account statement reflects this trend in that his "spendable amount" of funds is indicated as $0.  ECF No. 6 at 4 and 5.

with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.  It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

      II.    <u>Plaintiff's Obligations Upon Release</u>

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA.  Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated.  The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments.  Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

**MOTION FOR AN APPOINTED ATTORNEY**

Plaintiff has moved this Court to appoint him an attorney.  ECF No. 15.  As this is Plaintiff's first request for counsel, the Court advises Plaintiff that "[a]ppointment of counsel in a civil case is not a constitutional right."  *Wahl v McIver*, 773 F.2d 1169, 1174 (11th Cir. 1986).  Appointment of counsel is a privilege that is justified only by exceptional

circumstances.  *Id.*  In deciding whether legal counsel should be provided, the Court considers, among other factors, the merits of Plaintiff's claim and the complexity of the issues presented.  *Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989).[3]

In accordance with *Holt*, and upon a review of the record in this case, the Court notes that Plaintiff filed a complaint under § 1983 following the format and style of the Court's standard form and setting forth essential factual allegations.  *See generally* ECF No. 1.  The applicable legal doctrines in Plaintiff's claims are apparent, and the Court has not imposed any procedural requirements which would limit Plaintiff's ability to present his case.  *See Kilgo v. Ricks*, 983 F.2d 189, 193-94 (11th Cir. 1993).  Plaintiff has demonstrated his ability to present his allegations to the Court for review.  As such, Plaintiff's motion for appointment of counsel (ECF No. 15) is **DENIED**.

Should it later become apparent that legal assistance is required in order to avoid prejudice to Plaintiff's rights, the Court, **<u>on its own motion</u>**, will consider assisting him in securing legal counsel at that time. Consequently, there is no need for Plaintiff to file additional requests for counsel.

## MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff has filed a request for preliminary injunctive relief.  ECF No. 10.   The grant or denial of a preliminary injunction is a decision within the discretion of the district

---

[3] The federal *in forma pauperis* statute authorizes courts to "request an attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915(e)(1). The statute does not, however, provide any funding to pay attorneys for their representation or authorize courts to compel attorneys to represent an indigent party in a civil case. *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989).

court." *Carillon Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). In determining whether preliminary injunctive relief should be granted, the Court considers whether the movant has established: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (citations omitted). "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Robinson v. Attorney Gen.*, 957 F.3d 1171, 1178–79 (11th Cir. 2020) (citing *Ne. Fla. Ch. of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990)).

In Plaintiff's request for injunctive relief, he states that he is "also suffering from a dental problem, which may be affecting [his] health as well." ECF No. 10. He complains "dental has failed to pull a tooth that has grown behind a major tooth which can cause heart disease if left untreated". *Id*. He further alleges that he is experiencing chest pains. *Id*. Plaintiff requests "to have injunction relief granted immediately because of the on-going chest pains [he] incurs daily" and he "wish[es] for immediate assistance". *Id*. However, Plaintiff's amended complaint[4], which was filed over a week after his request for injunctive

---

[4] Plaintiff was specifically informed that his amended complaint would be the operative pleading in this action. ECF No. 8 at 4 ("Plaintiff's amended complaint will take the place of his original complaint"); *see Schreane v. Middlebrooks*¸ 522 F. App'x 845, 847 (11th Cir. 2013) (per curiam) (noting an amended complaint generally supersedes the original complaint unless the amended complaint specifically refers to or adopts the original complaint).

relief, presents allegations of deliberate indifference to a stomach condition referred to as gastritis, retaliation, and unconstitutional conditions of confinement.   *See* ECF No. 11.

"[T]he relief sought in the motion must be closely related to the conduct complained of in the actual complaint." *Brown v. Anglin*, 2016 WL 6803133, at *1 (N.D. Fla. Jun. 27, 2016), *report and recommendation adopted sub nom. Brown v. Holland*, 2016 WL 6780319 (N.D. Fla. Nov. 15, 2016); *see also Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir.1994).  The Court "may not grant injunctive relief to remedy an alleged [constitutional] violation" that "is not at issue in th[e] suit" before the Court. *See King v. Zamiara*, 788 F.3d 207, 217–18 (6th Cir. 2015) (citing *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945)).  Here, Plaintiff's operative complaint in no way presents any allegations of chest or tooth ailments nor any claim of a lack of dental treatment.  *Id*.  No such purpose of preserving the status quo will be served by granting Plaintiff preliminary injunctive relief as to his tooth and accompanying chest pains allegations since these allegations in his request for a preliminary injunction are generally unrelated to the allegations within the complaint.

Moreover, if Plaintiff's request for injunctive relief encompasses his claims of failure to treat his gastritis, the request for a preliminary injunction should still be denied.  "'A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the "burden of persuasion" as to the four requisites.'"  *All Care Nursing Serv., Inc. v. Bethesda Mem. Hosp., Inc*., 887 F2d. 1535, 1537 (11th Cir. 1989) (citations omitted).  Considering Plaintiff's motion in light of these requirements, the Plaintiff has not met the demanding showing required for the issuance of a preliminary

injunction.  First, he has not shown that his ambiguous claims related to the current medical treatment of his gastritis would necessarily survive either a motion to dismiss or a motion for summary judgment.  Thus, at this point in the litigation, the facts have not been sufficiently developed to conclude that there is a substantial likelihood that Plaintiff will ultimately prevail on the merits.

More importantly, however, Plaintiff has failed to establish irreparable injury will occur if the injunctive relief is denied.  Particularly, Plaintiff states that he "was *supposed* to receive outside treatment (esophogram) so that Dr. Wynn could *determine* if Plaintiff needed further treatment (surgery) which gastritis *may require if* the stomach acids are too high", "denial of further medical evaluation *can result* in serious bodily injury … and *may* cause stomach erosion if left untreated, which in this case *may be* happening", and "stomach inflammation … *could*  lead to stomach erosion or ulcers".  ECF No. 11 at 7-8 (emphasis added).  Thus, much like Plaintiff's claims in the request for injunctive relief regarding his tooth, Plaintiff's described "imminent danger" of harm from the current course of treatment at Macon State Prison for his gastritis is speculative and hypothetical. Therefore, Plaintiff's motion does not show that denial of a preliminary injunction would cause him *real and immediate* injury.  *See Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("a party has standing to seek injunctive relief only if [he] alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury").  Because Plaintiff's claims of danger are speculative, there is no reason to believe that an injunction must issue to protect the "status quo" until his claims can be adjudicated.  *See Suntrust Bank v. Houghton Mifflin Co.*, 268

F.3d 1257, 1265 (11th Cir. 2001) ("The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.") (quoting *Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fl.*, 896 F.2d 1283, 1284 (11th Cir.1990)).

It is therefore **RECOMMENDED** that Plaintiff's motion for preliminary injunctive relief be **DENIED**.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

I.    Standard of Review

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a).  Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding *in forma pauperis*. Both statutes apply in this case, and the standard of review is the same.  When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).  *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.    Plaintiff's Allegations

Despite the Court's specific instruction to present concise and orderly factual allegations in his recast complaint[5], Plaintiff's recast complaint remains circuitous and at times inscrutable as to which allegations apply to which Defendants. As best as the Court can discern, Plaintiff complains that he is not receiving proper medical care for gastritis while incarcerated at Macon State Prison.  ECF No. 11 at 5.  Plaintiff states that he "was supposed to receive outside treatment (esophogram) so that Dr. Wynn could determine if Plaintiff needed further treatment (surgery) which gastritis may require if the stomach acids are too high".  *Id*.  Plaintiff further complains that he has submitted many medical requests and grievances that are being ignored because Defendant Warden Smith "instructed his staff on numerous occasions to ignore [G]illis".  *Id*. at 5-7.  Plaintiff states that because "counselors, wardens (deputy) and officers" were ordered by Defendant Smith to ignore him, that Defendants Deputy Warden McKenzie, Unit Manager McKellar, and Counselor Jefferies ignored his grievances or denied them, "each defendant acting with deliberate indifference to serious medical need".  *Id*. at 5-9.  Plaintiff specifies that Defendant Jefferies "denied filings of certain grievances medical staff …., did not follow instructions of Dr. Wynn (GSP) & did not give medication prescribed to plaintiff and gave plaintiff wrong combination of medications".  *Id*. at 8

As to, Plaintiff alleges that the medical personnel Defendants – Dr. Cowen, NP Helmsley, Deborah Tymes, and Nurse Maxie – signed false medical documents that

---

[5] *See* ECF No. 8 at 4-5.

indicated that he had an esophogram, "failed to act by following Mr. Smith instructions", "conducted tests that had nothing to do with gastritis", did not report to Dr. Cowens that Macon State prison does not have proper medical testing equipment, and "acted with deliberate indifference to serious medical need by not acting on the sick calls, nor were grievances presented to them (Mr. Jefferies)". *Id*. at 5-7. Plaintiff claims that "the denial of further medical treatment violates plaintiff's 8th amendment deliberate indifference, the denial of further medical evaluation can result in serious bodily injury due to the stomach acids damaging the esophagus & may cause stomach erosion if left untreated". *Id*. at 7

Plaintiff makes an additional allegation that Defendant Warden Smith assigned him to administrative segregation from August 2020 to May 2021, "after learning that [Plaintiff] filed a state tort against the tact squad at another camp". *Id*. at 6. During his time in segregation, Plaintiff complains that he was not allowed the yard calls he enjoyed three times a week while in general population and that the segregation cell had brown water in its faucets that he had no choice but to drink. *Id*. Plaintiff states that he should receive damages and release from prison "from Warden Smith for prolonged segregation & deliberate indifference, which by way the conditions of segregation were the cause of the injury and by Smith instructions to his staff to ignore Gillis claims to receive help and medical treatment, he acted with deliberate indifference toward Gillis which results to bodily injury from incurring stomach inflammation which could lead to stomach erosion or ulcers". *Id*. at 8.

In his request for relief, Plaintiff seeks compensatory, punitive, and "future damages resulting from surgery if needed" as well as release from prison[6]. Id. at 9. "Plaintiff also ask the Court for injunction relief to allow Gillis treatment if the prisoner release order isn't granted." *Id*. at 8.

III.    Plaintiff's Claims

A.    Deliberate indifference to a serious medical need claim against Dr. Cowens, NP Helmsley, Deborah Tymes, and Nurse Maxie

"It is well settled that the 'deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment.'" *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" *Id*. (quoting *Estelle*, 429 U.S. at 105).

To state a deliberate indifference to serious medical needs claim under the Eighth Amendment, "a plaintiff 'must satisfy both an objective and a subjective inquiry.'" *Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015) (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)). The objective inquiry may be met by showing an

---

[6] The Eleventh Circuit has held that "relief of an Eighth Amendment violation does not include release from confinement." *Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990); *see also Heck v. Humphrey*, 512 U.S. 477, 481 (1994)(release from custody is not available as a remedy in a § 1983 action); *Vaz v. Skinner*, 634 F. App'x 778, 781 (11th Cir. 2015) ("[E]ven if Petitioner established a constitutional violation, he would not be entitled to the relief he seeks because release from imprisonment is not an available remedy for a conditions-of-confinement claim.").

"objectively serious medical need," and the subjective inquiry may be met by showing "that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) and *McElligott,* 182 F.3d at 1254 and *Campbell v. Sikes,* 169 F.3d 1353, 1363 (11th Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted).  Further, the condition must be one that would pose a "substantial risk of serious harm" if left unattended.  *Farrow*, 40 F.3d at 1243.

An official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Additionally, the disregard of risk must be "by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011); *see also Miller v. King,* 384 F.3d 1248, 1251 (11th Cir.2004) ("even gross negligence" is insufficient to establish liability under § 1983).  "[I]t is obduracy and wantonness, not inadvertence or error in good faith," that violates the Constitution in "'supplying medical needs.'" *Adams v. Poag,* 61 F.3d at 1543 (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

To show deliberate indifference, it is not enough that prison medical personnel have been negligent in diagnosing or treating a prisoner's condition, since it is clear that "[m]edical malpractice does not become a constitutional violation merely because the

14

victim is a prisoner." *Estelle,* 429 U.S. at 106; *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir.1991).   In fact, care provided to a prisoner need not be "perfect, the best obtainable, or even very good." *Harris,* 941 F.2d at 1510 (quoting *Brown v. Beck,* 481 F.Supp. 723, 726 (S.D.Ga.1980)).

Plaintiff's complaint regarding gastritis is so vague and speculative that it is difficult for the Court to determine whether his gastritis meets the objective test of a serious medical need.   However, out of an abundance of caution, the Court will presume that it does and move into the subjective inquiry.   Plaintiff's primary basis for this § 1983 claim is that he believes strongly that he should have an additional outside diagnostic test (the esophogram) that was suggested by a Doctor Wynn and that the Defendants have either denied him the test or falsely recorded in his medical file that he has had the test.   Particularly, Plaintiff states that he "was supposed to receive outside treatment (esophogram) so that Dr. Wynn could determine if Plaintiff needed further treatment (surgery) which gastritis may require if the stomach acids are too high" and "denial of further medical evaluation can result in serious bodily injury".   ECF No. 11 at 7-8.   Plaintiff possibly further complains that the Defendants performed medical testing that was not specific to gastritis and that he is receiving or has received the wrong medication or combination of medicines to treat his gastritis.   *Id.*; ECF No. 10.   Plaintiff acknowledges that he has been seen over several months by multiple medical personnel, including the named Defendants, for his health complaints.   He acknowledges that he has received medication for his condition for over a year.

Where an inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris*, 941 F.2d at 1507 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989)).  To do otherwise would be "to constitutionalize claims that sound in tort law."  *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985), *cert. denied,* 475 U.S. 1096 (1986); *see also Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").  Thus, "the question of whether government actors should have employed additional … forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams,* 61 F.3d at 1545 (quoting *Estelle,* 429 U.S. at 107); *Brinton v. Gaffney,* 554 F.Supp. 388, 389 (E.D.Pa.1983) (a § 1983 claim "does not lie if a prisoner's complaint is directed at the wisdom or quality of the medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice"). *Hamm,* 774 F.2d at 1575 (evidence showed that plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference).

It is thus **RECOMMENDED** that Plaintiff's deliberate indifference to a serious medical need claim against Defendants Cowens, Helmsley, Tymes, and Maxie be **DISMISSED** without prejudice.

B.   Deliberate indifference to a serious medical need claim against Warden Smith, Deputy Warden McKenzie, Unit Manager McKellar and Counselor Jefferies

Plaintiff's deliberate indifference to a serious medical need claims as to these Defendants appears to be rooted in their supervisory positions and in their denying or otherwise ignoring his grievances.  *See* ECF No 11 at 5-8.  Plaintiff attempts to establish liability by arguing that the prison administration Defendants have been deliberately indifferent to his medical needs because they have refused through the grievance process to change the decisions made by medical personnel in their treatment of his gastritis.  *Id*.

Supervisors within a prison are liable under § 1983 only if they personally participate in the constitutional violation, direct their subordinates to act unlawfully, or know their subordinates will act unlawfully but fail to stop them.  *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir.2010); s*ee also Asad v. Crosby*, 158 F. App'x 166, 170-72 (11th Cir. 2005).  Stated another way, a prisoner must allege facts showing either that a supervisor personally participated in the alleged constitutional violation or that there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation to state a claim against a prison official based solely on their supervisory position.  *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999); *Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003).

A prisoner has no constitutional right to participate in grievance procedures. *Wildberger v. Bracknell*, 869 F.2d 1467, 1467-68 (11th Cir. 1989); *Bingham*, 654 F.3d at 1171 (affirming district court's dismissal of Georgia state prisoner's § 1983 claim that

17

prison's grievance procedures were inadequate) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"); *Doe v. Moore*, 410 F.3d 1337, 1350 (11th Cir.2005) ("State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory"). A supervisor is not "personally involved" in a constitutional violation merely because he fails to respond to complaints from a prisoner. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), *cert. denied*, 530 U.S. 1264 (2000).

Moreover, allegations of a defendant's involvement in the processing of a prison grievance regarding medical care specifically fails to demonstrate a defendant's personal involvement in the alleged constitutional misconduct of deliberate indifference to a medical need. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1208 (3rd Cir. 1988); *Asad*, 158 F. App'x at 170-72 (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"). Defendants Smith, McKenzie, McKellar, and Jefferies are prison administrators and cannot be considered deliberately indifferent to Plaintiff's medical needs when they know him to be under the care and treatment of prison doctors. *See Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir.2004)

("If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."); *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir.1995) (because prison administrators "lacked medical expertise, they cannot be liable for the medical staff's diagnostic decision" regarding a prisoner's medical treatment); *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) ("A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions").   Thus, to the extent Plaintiff alleges Defendants Smith, McKenzie, McKellar, and Jefferies failed to intervene in, or somehow change, diagnostic and treatment decisions made by the medical staff, his claims fail.

Accordingly, it is **RECOMMENDED** that Plaintiff's deliberate indifference to a serious medical need claims as to Defendants Smith, McKenzie, McKellar, and Jefferies be **DISMISSED**.

C.    Retaliation claim against Defendant Smith

Plaintiff states that "Mr. Smith placed me inside administrative seg during Aug 2020 until May 2021 after learning that I filed a state tort against the tact squad of another camp" and that "[t]he (pending investigation) lasted 10 months w/o notice or remedy".  ECF No. 11 at 6.  Thus, Plaintiff appears to raise a First Amendment retaliation claim against Defendant Smith.

"The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted), *cert. denied*, 133 S. Ct. 445 (2012).   To state a claim of retaliation, an inmate must establish that: "(1)

his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." *Id.* (quoting *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008)).  A plaintiff is required to do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (citations omitted).  In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit. *Mosley*, 532 F.3d at 1278.

"To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting *Mosley*, 532 F.3d at 1278).  Absent direct evidence of motivation, a causal connection may be established through "the more probable scenario, '[] a chronology of events from which retaliation may plausibly be inferred.'" *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988)); *see also Williams v. Brown*, 347 F. App'x 429, 435 (11th Cir. 2009) (per curiam).

Plaintiff has not sufficiently articulated any "affirmative evidence" that Defendant Smith placed him in administrative segregation specifically to retaliate against him for a lawsuit in which Defendant Smith is not named.  *Cf., e.g., Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that plaintiff failed to state a claim where he "produced

nothing, beyond his own conclusory allegations, suggesting that" defendant's actions "were motivated by a retaliatory animus"). Plaintiff provides no chronology of events from which retaliation can even be inferred and fails to state when the lawsuit regarding his incarceration at a facility other than Macon State Prison was filed, how Defendant Smith became aware of it, or any other factor that would allow this Court to establish a causal connection between the lawsuit and the confinement in administrative segregation ordered by the Defendant. *See, e.g., Gonzalez v. Archer*, 725 F. App'x 739, 742-43 (11th Cir. 2018) (per curiam) (affirming dismissal of retaliation claims as vague and conclusory where prisoner "did not present facts that plausibly support[ed] a causal connection" between his grievances, the defendants, and the adverse actions taken).

Plaintiff's allegations of retaliation are therefore too conclusory to state a claim upon which relief may be granted and are subject to dismissal. *Robinson v. Boyd*, No. 5:03CV25/MMP/MD, 2005 WL 1278136, at *3 (N.D. Fla. May 26, 2005) (observing that "broad, conclusory allegations of retaliation are insufficient to state a claim under section 1983"). Accordingly, it is **RECOMMENDED** that Plaintiff's retaliation claim against Defendant Smith be **DISMISSED**.

D.   Due Process and conditions of confinement claim against Defendant Smith

Although the Court cannot find that Plaintiff has sufficiently stated a retaliation claim as to his placement in administrative segregation, his allegations do raise concerns about the process utilized in placing him there and the length of time in which he was confined therein. Plaintiff's due process and conditions of confinement claims arise out of his initial placement and subsequent retention in administrative segregation by Defendant

21

Smith.   Particularly, Plaintiff alleges that on August 13, 2020, he was "housed in segregation without notice" and that Defendant Smith placed him there "without a disciplinary report and verbally stated that [Plaintiff] was pending investigating".  ECF No. 1 at 6; ECF No. 1-1. Plaintiff further complains that "no notice was written during the administrative segregation".  ECF No. 1-1.  Plaintiff states he "was released around April 12, 2021, after writing to the ombudsman" and "[t]he confinement was deemed illegal, the solitary confinement was prolonged and indefinite".  *Id*.  Read liberally, Plaintiff's complaint and amended complaint present a due process claim based on allegations that he was held in administrative segregation for approximately eight months without cause, notice, hearing, or review.

The Eleventh Circuit has held that "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir.2003) (citing *Cryder v. Oxendine,* 24 F.3d 175, 177 (11th Cir.1994)).  There is no doubt that a Warden placing an inmate in segregation can be construed as a state action.

To determine whether Plaintiff was deprived of his "liberty" within the meaning of the Fourteenth Amendment "is often a difficult determination in the context of a prison, because prisoners have *already* been deprived of their liberty in the ordinary sense of the term." *Bass v. Perrin,* 170 F.3d 1312, 1318 (11th Cir.1999).  There are two circumstances in which a prisoner is further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it

essentially exceeds the sentence imposed by the Court.  *Id.* (citing *Sandin v. Conner,* 515 U.S. 472, 484 (1995) and *Vitek v. Jones,* 445 U.S. 480, 492–93 (1980)).  The second is when the State has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Id.*. (citing *Sandin,* 515 U.S. at 484, *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974) and *Dudley v. Stewart,* 724 F.2d 1493, 1497–98 (11th Cir.1984)).

Plaintiff does not allege that his punishment affected the duration of his sentence; thus, the only issue is whether his transfer to segregation imposed an atypical or significant hardship on him.  Generally, "[w]hen an inmate is placed in conditions more restrictive than those in the general prison population, whether protective segregation ... or discretionary administrative segregation, his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Gilyard v. McLaughlin,* 5:14–CV–185–MTT, 2014 WL 2987108, *3 (M.D.Ga. July 2, 2014) (citing *Earl v. Racine Cnty. Jail,* 718 F.3d 689, 691 (7th Cir.2013)). As a general rule, the placement of a prisoner in segregation for a reasonably short period, such as thirty days, does not implicate a protected liberty interest as it does not present "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 1318.

Plaintiff alleges he was held in administrative segregation for eight months and experienced atypical hardships during that restricted confinement.  Thus, the Court finds

that Plaintiff's liberty interests were implicated such that he should have been afforded

constitutionally adequate process as to placement and continued detention in segregation.

As for the process due, the court in *O'Connor v. FDOC*, 379 F. App'x 946, 948 (11th

Cir. 2010), explains what is constitutionally required of prison administrators to house an

inmate in segregation for disciplinary and non-disciplinary reasons:

> "The minimum requirements of due process for prisoners facing disciplinary
> action ... are (1) advance written notice of the charges; (2) a written statement
> of the reasons for the disciplinary action taken; and (3) the opportunity to call
> witnesses and present evidence, when consistent with institutional safety and
> correctional goals." *Bass v. Perrin,* 170 F.3d 1312, 1318 (11th Cir.1999). A
> prisoner placed in close management for non-disciplinary reasons, however,
> is merely entitled to "some notice of the charges against him and an
> opportunity to present his views." *Sheley v. Dugger,* 833 F.2d 1420, 1426
> (11th Cir.1987) (quoting *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 874,
> 74 L.Ed.2d 675 (1983)). Due process also requires that prisoners held in
> close management be given "some sort of periodic review of the[ir]
> confinement." *Id.*

In this case, Plaintiff alleges that he received no notice of why he was being placed in

administrative segregation other than being told it was "pending investigation". Plaintiff

further contends that he was held for eight months without ever receiving notice of why he

was there and that an ombudsman ultimately found his administrative segregation was

illegal. Plaintiff has thus presented factual allegations to meet all three prongs of a due

process claim. *See Johnson v. Owens*, No. 5:14-CV-3, 2014 WL 6620938, at *3–4 (M.D.

Ga. Nov. 21, 2014). Accordingly, his claim against Defendant Smith for violation of his

due process rights shall proceed for further factual development.

In addition to the due process issues raised, Plaintiff also contends that the

conditions of confinement in segregation violated his Eighth Amendment rights to be free

from cruel and unusual punishment.  To be clear, conditions imposed in "administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." *Sheley v. Dugger*, 833 F.2d 1420, 1428–29 (11th Cir. 1987). Although prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system," and "[u]nder certain circumstances, administrative segregation is a necessary limitation of privileges and rights that incarceration demands."  *Al-Amin v. Donald*, 165 F. App'x 733, 738 (11th Cir. 2006) (quoting *Sandin*, 515 U.S. at 485).

 To prevail on an Eighth Amendment conditions-of-confinement claim, a prisoner must show that the deprivations he suffers are objectively and sufficiently "serious" or "extreme" as to constitute a denial of the "minimal civilized measure of life's necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010); *see also Brooks v. Warden*, 800 F.3d 1295, 1303-04 (11th Cir. 2015).  This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted), or if society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Plaintiff alleges that while he was in segregation he was denied all outside recreation and had only brown water to drink in his cell, while Defendant Smith ordered all supervisors to ignore his grievances and requests.  Standing alone, each allegation may not

be enough to state a conditions of confinement claim.  Inmates have no constitutional right to outdoor recreation time. *Jones v. Diamond*, 594 F.2d 997, 1012–13 (5th Cir.1979); *see also Anthony v. Warden*, 823 F. App'x 703 at 708 (citing *Bass*, 170 F.3d at 1317 and 1320) (holding that "even 'total deprivation of outdoor exercise' as a part of 'continuous [solitary] confinement' does not qualify as wanton where prisoners' health is … monitored and they are allowed to exercise in their cells.").  Allegations of dirty water in a cell without further claim of denial of all hydration and/ or injury is not enough to state a claim.  *Stallworth v. Wilkins*, 802 F. App'x 435, 444 (11th Cir. 2020); *Gross v. White*, 2008 U.S. Dist. LEXIS 65432, 2008 WL 2795805, at *9 (M.D. Fla. July 18, 2008) (unpublished) (finding the complaint failed to state a claim based on plaintiff's allegations that, among other things, the water was turned off to his isolation cell which was found to be a minor discomfort in light of the absence of allegations that the prisoner was not deprived of food or liquids), aff'd, 340 Fed.Appx. 527 (11th Cir. 2009); *Williams v. Delo*, 49 F.3d 442, 445-46 (8th Cir. 1995) (finding that the plaintiff's constitutional rights were not violated during his stay in a strip cell where the water was turned off because, among other things, he was given three meals a day with milk, and noting there were no allegations of injury); *compare Spires v. Paul*, 581 F. App'x 786 (11th Cir. 2014) (finding that inmate who was housed in an isolation cell without potable water for two weeks, forcing him to drink out of toilet, stated viable conditions of confinement claim).

Plaintiff alleges, however, that he was subjected to these conditions for nearly eight months and that these conditions caused him to "contract[] gastritis by way of a stressful punitive segregation".  ECF No. 1 at 6.  In light of these allegations of harm to Plaintiff's

26

health, it would be premature to dismiss Plaintiff's condition of confinement claims prior to service. *See Sheley,* 833 F.2d 1420, 1429-30 (11th Cir. 1987) (citing *Hutto v. Finney,* 437 U.S. 678, 685 (1978)) ("Segregation over a significantly extended period of time, coupled with other factors such as a lack of exercise, may raise Eighth Amendment concerns, especially when the inmate alleges that the segregation was "punitive" in nature and caused "mental and physical deterioration."). Thus, Plaintiff's Eighth Amendment conditions of confinement claims against Defendant Smith shall proceed for further factual development.

## IV.   Conclusion

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's request for preliminary injunctive relief (ECF No. 10) be **DENIED**. Plaintiff's due process and conditions of confinement claims against Defendant Smith shall proceed for further factual development. It is **RECOMMENDED**, however, that Plaintiff's deliberate indifference to a serious medical need and retaliation claim against Defendant Smith be **DISMISSED without prejudice.** It is further **RECOMMENDED** that Plaintiff's claims as to Defendants Cowens, Helmsley, Tymes, Maxie, Smith, McKenzie, McKellar, and Jefferies be **DISMISSED without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III., United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written

objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Any objection should be no longer than **TWENTY (20) PAGES** in length.  *See* M.D. Ga. L.R. 7.4.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

### ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendant Warden Tamarshe Smith, it is accordingly **ORDERED** that service be made on these Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

### DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

### DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendant is similarly advised that she is expected to diligently defend all allegations made against her and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that

discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,<br>PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.  The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may**

**result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.  The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:  except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party shall be required to respond to any such requests which exceed these limitations.

**REQUESTS FOR DISMISSAL AND/OR JUDGMENT**

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 13th day of May, 2022.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge