IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| FRANK GILLIS, | : | |
| **Plaintiff,** | : | |
| v. | : | Case No. 5:22-cv-00027-CAR-CHW |
| Warden TARMARSHE SMITH, | : | Proceedings Under 42 U.S.C. §1983 |
| **Defendant.** | : | Before the U. S. Magistrate Judge |

## ORDER AND RECOMMENDATION

*Pro se* Plaintiff Frank Gillis, now a state inmate at Smith State Prison, filed this action citing several claims under 42 U.S.C. § 1983 concerning his incarceration at Macon State Prison. (Docs. 1, 11). After screening the complaint, Plaintiff's due process and conditions-of-confinement claims against Defendant Smith related to Plaintiff's time in administrative segregation were permitted to continue for factual development. (Docs. 16, 20). In lieu of answering the complaint, Defendant Smith filed a partial motion to dismiss. (Doc. 32). Plaintiff later moved to amend his complaint to clarify and add a retaliation claim against Defendant Smith regarding his placement in administrative segregation. (Docs. 27, 36). Defendant was permitted to amend the pending motion to dismiss to address the new retaliation claim. (Doc. 36). Defendant did not amend his partial motion to dismiss, but instead moved for an extension of time to respond to the new claim following the decision on the motion to dismiss, which was granted. (Docs. 37, 41). Plaintiff responded to Defendant's motion to dismiss, but he also filed additional motions seeking a preliminary injunction and temporary restraining order (Docs. 51, 52) and to amend the complaint. (Docs. 42, 46).

1

For the reasons explained below, Plaintiff's motions to amend (Docs. 42, 46) are **DENIED as futile**, but the substance of the motions has been considered as responsive to the motion to dismiss. It is **RECOMMENDED** that Plaintiff's motions for a preliminary injunction and temporary restraining order (Docs. 51, 52) be **DENIED as MOOT** and that Defendant's partial motion to dismiss (Doc. 32) be **GRANTED**.

*Plaintiff's Motions for a Preliminary Injunction and Temporary Restraining Order*

Plaintiff filed two motions for a preliminary injunction and temporary restraining order based upon the alleged confiscation of property from the Plaintiff's cell and deferral of Plaintiff's legal mail. (Docs. 51, 52). He asks that Defendant Smith and other non-defendant parties be enjoined from interfering with his legal materials and using prison policy to harass him. (*Id.*) The Court denied Plaintiff's previous requests for an injunction and explained what Plaintiff must establish before being entitled to relief. (Docs. 10, 16, 20). It is not necessary to examine the merits of Plaintiff's motions, however, because his requests for injunctive relief were mooted by his transfer to Smith State Prison. *See, e.g.*, *McKinnon v. Talladega Cnty.*, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief.") *and* (Doc. 55). Therefore, Plaintiff's motions for a preliminary injunction and temporary restraining order (Docs. 51, 52) should be denied.

*Plaintiff's Motions to Amend*

Plaintiff has filed an unsigned motion to amend (Doc. 42) and then a signed motion to amend (Doc. 46) that, in part, mimicked the first motion. Plaintiff moves to amend his complaint, but the motions actually respond to Defendant's motion to dismiss rather than truly amending any claims of the complaint. Therefore, it is **ORDERED** that Plaintiff's motions to amend (Doc. 42,

2

46) be **DENIED as FUTILE**. Instead, the motions have been considered and construed as responses to Defendant's motion to dismiss.

*Defendant's Partial Motion to Dismiss*

In Defendant's partial motion to dismiss (Doc. 32), Defendant seeks to dismiss Plaintiff's official capacity claims against him under the Eleventh Amendment and sovereign immunity. He also moves to dismiss Plaintiff's conditions-of-confinement claims for failure to exhaust. Defendant is not seeking to dismiss Plaintiff's retaliation and due process claims.

A. Failure to Exhaust

The Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust available administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law. 42 U.S.C. § 1997e(a). Exhaustion in this context means proper exhaustion: prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in a federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement is "designed to eliminate unwarranted federal court interference with the administration of prisons" by "seek[ing] to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008).

The Eleventh Circuit's *Turner* opinion establishes a two-step process for reviewing motions to dismiss based on a prisoner's failure to exhaust. A reviewing court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be

3

dismissed." *Id*. at 1082. Second, if the complaint is not dismissed under step one, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. …Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*. at 1082-83 (internal citations omitted).

Grievance Procedure

The grievance procedure applicable in this case is set by the Georgia Department of Corrections (GDOC) Standard Operating Procedure No. 227.02. (Doc. 32-2, Attachment 1). Under that procedure, prisoners must follow a two-step process by first filing an "original grievance" within 10 days of the grievable issue. (*Id*. at 8).[1] Prisoners may file outside of the 10-day window if they show good cause. (*Id*.). The original grievance is then screened by prison staff, and typically either rejected or accepted for processing. (*Id*. at 9). The grievance procedure further provides that a response of some kind is due within 40 days of the date of a grievance's submission, with the possibility of a 10-day extension on written notice. (*Id*. at 11). On expiration of the response period or on the prisoner's receipt of a response, the prisoner must proceed to step two by filing a "central office appeal" within seven days. (*Id*. at 14). The grievance procedure then contemplates a 120-day period in which the Commissioner may give a response. (*Id*. at 15). Even if a grievance which alleged physical force allegations is rejected for not complying with policy, the grievance will be forwarded to the Criminal Investigation Division. (*Id*., p. 12).

Analysis

Defendant moves to dismiss Plaintiff's conditions-of-confinement claims under the PLRA's exhaustion requirement. They argue that Plaintiff never grieved any issue relating to his

---

1 The referenced page numbers cite to the policy itself and not the document to which the policy was attached.

4

conditions-of-confinement claims, and that Plaintiff therefore did not fully exhaust before he originally filed suit. Plaintiff counters that he fulfilled the exhaustion requirements through his filed grievances and that he was prevented from filing other grievances. (Docs. 1, 11, 42, 43, 46, 47). Because the record shows that the administrative process was available to Plaintiff and that he did not exhaust prior to commencing suit as required for his conditions-of-confinement claims, these claims should be dismissed.

    Determining whether dismissal is appropriate requires applying the test outlined in *Turner* to determine whether Plaintiff failed to exhaust the administrative remedies available to him. In first considering whether dismissal for failure to exhaust is appropriate under *Turner*'s step one, a court must first consider all the alleged facts construed in favor of Plaintiff when the facts conflict. Plaintiff alleges that he filed grievances regarding the matters in his complaint and that one grievance was referred to CID. (Docs. 1, 11). He also argues that the administrative process was unavailable to him for any unexhausted claims as contemplated under *Ross v. Blake*, 578 U.S. 632 (2016). When the facts alleged in the complaint are construed in Plaintiff's favor, his claims survive under step one of *Turner*. Under step two of *Turner*, however, the record shows that Plaintiff failed to exhaust his available administrative remedies prior to filing suit.

    Under *Turner*'s second step, any disputed facts must be examined to determine whether Plaintiff exhausted the available administrative remedies regarding his conditions-of-confinement claims prior to filing suit. Following screening, Plaintiff's conditions-of-confinement claims arising from his time in MSP's administrative segregation relating to prolonged lack of exercise and exposure to dirty water were permitted to move forward. (Doc. 16, p. 24-27). Plaintiff alleges he was placed in administrative segregation in August 2020 and released in April 2021. (*Id.*, p. 22).

In support of his motion to dismiss these claims for failure to exhaust, Defendant provided copies of Plaintiff's grievances and a declaration from Curtis Jeffries, the Grievance Coordinator at MSP. (Doc. 32-2). Plaintiff's grievance history shows that he filed 32 grievances while housed at MSP. (*Id.*, p. 33-34). For the time period related to Plaintiff's administration segregation, Plaintiff filed 11 grievances. (*Id.*) From June 2021 until Plaintiff commenced suit on December 14, 2021, Plaintiff filed an additional 11 grievances. (*Id.*; Doc. 1). The parties specifically reference 15 grievances in their collective filings. Of these 15 grievances, five were exhausted and one was referred to the Criminal Investigation Division (CID). The 15 grievances are summarized as follows:

- Grievance No. 318067: In Grievance No. 318067, submitted December 16, 2020, Plaintiff challenged the denial of adequate counseling and stated that he had not received any counseling since September 2020. (Doc. 32-3, p. 36). Staff responded by explaining that Plaintiff had been placed in the Tier unit because of his behavior. (*Id.*) The grievance was denied in January 2021. (*Id.*). Plaintiff did not appeal this grievance. *See* (*Id.*, p. 33, 36).

- Grievance No. 319386: On January 19, 2021, Plaintiff submitted Grievance No. 319386 complaining about indefinite solitary confinement and prolonged segregation based on unfair treatment from a false disciplinary report. (Doc. 32-3, p. 38). Plaintiff specifically noted that "[i]n no circumstances may restrictions or disciplinary sanctions…amount to torture or other cruel, inhumane, or degrading treatment or punishment." (*Id.*) Staff rejected the grievance because disciplinary actions are non-grievable under GDOC policy. (*Id.*) Plaintiff appealed, and the appeal was denied on February 26, 2021. (*Id.*, p. 39). Plaintiff acknowledged the final appeal decision on March 17, 2021. (*Id.*, p. 33, 39).

- Grievance No. 320426: Grievance No. 320426, from February 15, 2021, raised issues related to Plaintiff's failed attempted to get a copy of his prisoner account statement. (Doc. 32-3, p. 41). Notes indicate that the issue was resolved, and Plaintiff dropped the grievance on February 23, 2021. (*Id*.)

- Grievance No. 320470: In Grievance No. 320470, dated February 16, 2021, Plaintiff complained that his mail was being censored by prison staff, which ultimately threatened his well-being and safety. (Doc. 32-2, p. 43). As a resolution, Plaintiff requested a transfer. (*Id*.) Plaintiff's grievance was rejected. (*Id*.) Plaintiff appealed, and the grievance was denied because Plaintiff failed to follow proper procedures for requesting transfer and because he did not adequately show that his life was in danger. (*Id*., p. 44).

- Grievance No. 321413: In Grievance No. 321413, from March 1, 2021, Plaintiff complained about legal mail issues and other administrative issues at MSP. (Doc. 32-2, p. 46). Plaintiff alleged that there was a retaliation campaign against him. (*Id*.) The grievance was rejected in later March 2021 because it contained more than one issue. (*Id*.) Plaintiff did not appeal. *See* (*Id*., p. 33, 46).

- Grievance No. 322471: In Grievance No. 322471, from March 16, 2021, Plaintiff complained about not receiving a stimulus or incentive meal despite not having a disciplinary report since August 2020. (Doc. 32-2, p. 48). Plaintiff also demanded that the business office stop filing his name for tax purposes. (*Id*.) The grievance was rejected, which Plaintiff acknowledged on April 16, 2021. (*Id*.) Plaintiff did not appeal. (*Id*., p. 33, 48).

- Grievance No. 322967: Grievance No. 322967, filed April 13, 2021, concerned allegations that Plaintiff had been denied family contact and that his counselor ignored him. (Doc. 32-

2, p. 50). The grievance was denied on May 4, 2021, and Plaintiff was notified on May 7, 2021. (*Id*.) Plaintiff did not appeal. (*Id*., p. 33, 50).

- <u>Grievance No. 324269</u>: Plaintiff filed Grievance No. 324269 on May 5, 2021, regarding a use of force and subsequent taking of property that occurred at Telfair State Prison on December 16, 2019. (Doc. 32-3, p. 52). The grievance was rejected for being filed out of time. (*Id*.) Plaintiff did not appeal. (*Id*., p. 33, 52).

- <u>Grievance No: 324524</u>: Grievance No. 324524 duplicated Grievance No. 324269. (*Id*., 33, 54).

- <u>Grievance No. 324379</u>: Plaintiff filed Grievance No. 324379 on May 17, 2021, complaining of a lack of medical treatment for a stomach hernia. (Doc. 32-3, p. 56). Plaintiff described this as an emergency grievance. (*Id*.) Because the investigation showed that Plaintiff was receiving treatment, the grievance was denied on June 24, 2021. (*Id*., p. 33, 56; Doc. 1-11). Plaintiff acknowledged that denial on June 29, 2021, and he did not file an appeal. (Doc. 32-2, p. 33, 56).

- <u>Grievance No. 324774</u>: In Grievance No. 324774, filed May 26, 2021, Plaintiff accused staff member McKeller of acting unprofessionally and creating an unsafe environment by using abusive authority to have Plaintiff locked down. (Doc. 32-2, p. 58). Plaintiff alleged this lockdown led to a lack of medical treatment. (*Id*.) Staff described Plaintiff's behavior that led to him being removed from medical, and the grievance was denied. (*Id*.) Plaintiff appealed to the Central Office, which denied the grievance on November 12, 2021. (*Id*., 33, 59; Doc. 1-9).

- <u>Grievance No. 326153</u>: Through Grievance No. 326153, from June 28, 2021, Plaintiff continued to complain about a lack of medical care. (Doc. 32-3, p. 61). The investigation

again showed that Plaintiff had visited medical and received treatment, so the grievance was denied. (*Id*.) Plaintiff did not appeal. (*Id*., p. 33, 61).

- Grievance No. 327168: Plaintiff provided a summary of Grievance No. 327168, which he states was filed August 5, 2021, alleging a lack of medical treatment because medical staff failed to prescribe necessary medication. (Doc. 1, p. 7). Plaintiff's grievance history notes that this grievance number was received on July 19, 2021. (Doc. 32-2, p. 33). The grievance was denied on August 31, 2021. (Doc. 1-4). Plaintiff appealed, and the grievance was finally denied on May 23, 2022. (Doc. 32-3, p. 33).

- Grievance No. 330040: In Grievance No. 330040, filed September 30, 2021, Plaintiff cited emotional distress experienced from the conditions of his segregation stemming from stress, lack of exercise, diet, and in adequate medical care. (Doc. 32-2, p. 63). He also accused staff of falsifying medical records. (*Id*.) Staff recommended that the grievance be rejected because Plaintiff filed it too late. (*Id*.) The warden rejected the grievance for raising more than issue. (*Id*.). Plaintiff appealed, and on January 26, 2022, the grievance was rejected for being untimely filed. (*Id*., p. 33, 64).

- Grievance No. 332176: In Grievance No. 332176, Plaintiff raised several issues relating to what he claimed was an unsafe environment for a number of reasons, including Defendant's failure to retain documents and an assault by two staff members in August 2021. (Doc. 1, p. 8). Plaintiff states that this grievance is from September 30, 2021. (*Id*.) However, the grievance history shows that the grievance was accepted November 1, 2021. (Doc. 32-2, p. 33). The matter was referred to the CID. (*Id*.)

The PLRA requires exhaustion *prior* to filing suit. 42 U.S.C. § 1997e(a). Plaintiff's initial complaint serves as the marker for whether he properly exhausted his available administrative

9

remedies as required. *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000). In *Harris*, the Eleventh Circuit, sitting *en banc*, considered the question of what the word "brought" means in the context of the PLRA requirements and an amended complaint. The Court concluded that "'brought' means 'commenced.'" *Id*. at 974. Even amending or supplementing the complaint to show exhaustion which did not exist when the action commenced will not suffice to meet the exhaustion requirement. *Id*. at 982-984 (discussing Fed. R. Civ. P. 15 and other examples of where amendment will not cure jurisdictional requirements needed to bring suit). Pursuant to *Harris*, the entire administrative process, from initial grievance to the appeal outcome, needed to have been completed *before* Plaintiff filed this action on December 14, 2021.

1. *The grievance process at Macon State Prison was available to Plaintiff.*

Plaintiff suggests that the grievances process was unavailable to him at MSP and that he should be excused from exhausting under the PLRA. (Doc. 43). He cites *Ross v. Blake* in support of this argument. Courts have outlined three different ways a plaintiff can show that administrative remedies are unavailable:

> The modifier "available" means that an administrative remedy must provide the possibility of some relief. *Id.* at 643. There are three kinds of circumstances that make an administrative remedy unavailable. *Id.* First, an administrative remedy is unavailable when the administrative procedure operates as a simple "dead end," with officers unable or consistently unwilling to provide any relief to aggrieved inmates. *Id.* For example, if a handbook required inmates to submit grievances to a particular office and the office disclaims the capacity to consider petitions or if officials have authority but decline to exercise it, then it is unavailable. *Id.* Second, a remedy is unavailable when an administrative scheme is so opaque that it is incapable of use. *Id.* The mechanism may exist to provide relief, but no ordinary prisoner can discern or navigate it. *Id.* at 643-644. Third, a remedy is unavailable

> when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, and intimidation. *Id.* at 644.
>
> *McDowell v. Bowman*, 2022 WL 4140331, at *3 (11th Cir. Sept. 13, 2022) (citing *Ross*, 578 U.S. 632).

Plaintiff's argument falls within the third *Ross* exception because he alleges that Defendant told MSP staff members to ignore his grievances, which prevented him from exhausting his claims.

To show that administrative remedies were unavailable due to threats of retaliation by prison officials, a plaintiff must show that "(1) the threat actually deterred the inmate from lodging a grievance or pursuing part of the grievance process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Montalban v. Samuels*, 2022 WL 4362800, at *2 (11th Cir. Sept. 21, 2022) (citing *Turner*, 541 F.3d at 1085). Plaintiff does not allege he was intimidated or threatened to stop filing grievances. Instead, he simply suggests staff was told to ignore his grievances.

There is no support in the record that Plaintiff's grievances were ignored during his entire incarceration at MSP. Plaintiff specifically provided several grievances allegedly submitted from September 6, 2021 through June 6, 2022, which appear to be unprocessed. *See, e.g.*, (Docs. 43-1, p. 1-6). The allegedly ignored or unprocessed grievances cover dates beyond the time that Plaintiff was in administration segregation and therefore do not show unavailability for the time period covering Plaintiff's claims.[2] Moreover, Plaintiff's unavailability argument is wholly undermined by his own grievance history which demonstrates that he filed *thirty-two* grievances while he was

---

[2] Plaintiff also attached allegedly unprocessed grievances to his original complaint. They also post-date his time in administrative segregation. (Docs. 1-6, 1-7, 1-8). The authenticity of these grievances is questionable. For example, a grievance for a November 15, 2021 incident was allegedly received by staff three days earlier on November 12, 2021. (Doc. 1-8).

11

at MSP. (Doc. 32-2, p. 33-34). Of the 32 grievances Plaintiff filed at MSP, Plaintiff filed seven of them while in administrative segregation and another four during the month following his release. (*Id.*, p. 33). He filed another 11 prior to filing suit. (*Id.*) A review of his entire history showed that he appealed 7 grievances to a final determination. (*Id.*) The record further shows that no grievance went unanswered, even if the answer was a rejection because Plaintiff failed to follow policy. Nothing in the record suggests that Plaintiff was deterred from filing a grievance or that staff members ignored his grievances. Instead, the record shows that the grievance process was capable of use, Plaintiff knew how to use it, Plaintiffled availed himself of the process many times, and MSP staff processed his grievances. Based on the record before the Court, the grievance process was available to Plaintiff, and he is not excused from the requirement to exhaust.

   2. *Plaintiff did not properly exhaust prior to filing suit.*

Defendant argues that Plaintiff failed to exhaust in two ways. First, he argues that Plaintiff never grieved any issue relating to the conditions-of-confinement claims. He also argues that even the fully exhausted grievances do not account for proper exhaustion under the PLRA. Plaintiff counters that he exhausted his claims through Grievance Nos. 319386, 330040, and 332176. The record shows that Plaintiff did not properly exhaust his conditions-of-confinement claims prior to filing suit.

Plaintiff is correct that Grievance No. 319386 was properly exhausted, but it does not support his conditions-of-confinement claims. Instead, this grievance relates to Plaintiff's claims that he was placed in administrative segregation in retaliation and without due process. It does not raise issues related to dirty water and lack of exercise. Therefore, this grievance cannot serve as exhausting his conditions-of-confinement claims.

Grievance No. 330040 is the closest to Plaintiff's claims because it discussed lack of exercise. Even if the Court accepts that this grievance raises a conditions-of-confinement issue, the grievance was rejected for not following policy, and it was not fully exhausted until January 26, 2022, more than a month *after* Plaintiff filed suit. Plaintiff must have fully exhausted the administrative process before commencing suit. Therefore, Plaintiff cannot rely on Grievance No. 330040 to show exhaustion.

Plaintiff lastly argues that Grievance No. 332176 exhausted his claims because it discussed the unsafe environment that Defendant created when he failed to report incidents relating Plaintiff's safety. This grievance was referred to CID. This grievance was filed in September 2021, however, five months after Plaintiff was released from administrative segregation. It also cites assaults that happened in August 2021. The substance of the grievance post-dates Plaintiff's time in administration segregation, and it did not grieve the basis of his conditions-of-confinement claims. Moreover, Plaintiff admits that this grievance supports claims in a separate, pending case. (Doc. 43, p. 2). This grievance does not demonstrate that Plaintiff properly exhausted prior to filing this suit.

Plaintiff's grievance history reflects two other grievances that were filed prior to Plaintiff filing suit and eventually fully exhausted. Grievance No. 324774 raised issues of unprofessional conduct by staff leading to Plaintiff's lockdown and lack of medical treatment. This grievance was fully appealed and denied prior to Plaintiff filing suit, but it did not raise any issue related to his conditions-of-confinement claims. Grievance No. 327168 concerned a medical treatment issue and was not exhausted until May 23, 2022, which was after Plaintiff filed suit. Therefore, these grievances also do not show that Plaintiff fully exhausted his administrative remedies as required under the PLRA.

Plaintiff did not fully exhaust his available administrative remedies regarding his conditions-of-confinement claims. Therefore, these claims should be dismissed without prejudice.

B. *Plaintiff's claims for money damages are barred against Defendant in his official capacity under the Eleventh Amendment.*

Defendant also moves to dismiss any money claims against him in his official capacity. In Plaintiff's motion to amend, which this recommendation construes as a response to the motion to dismiss, Plaintiff clarified that he intended to sue Defendant only in his individual capacity. (Doc. 46-2). To the extent that Plaintiff's operative complaint appears to seek recovery of money damages against Defendant in his official capacity, such claims would be barred by the Eleventh Amendment and 42 U.S.C. § 1983. *See generally*, *Kentucky v. Graham*, 473 U.S. 159, 169 n. 17. Defendant was employed by the Georgia Department of Corrections at MSP when the incidents underlying Plaintiff's claims occurred. The State of Georgia has not waived sovereign immunity, and Section 1983 was not meant to abrogate a state's Eleventh Amendment sovereign immunity, therefore Plaintiff is barred from suing Defendant in his official capacity for damages. Section 1983 itself also precludes any official-capacity claims against Defendant for nominal damages because the state is not a person for under the meaning of Section 1983. *Moody v. City of Delray Beach*, 609 F. App'x 966, 967 (11th Cir. 2015) (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)). Section 1983 provides no remedy for the Plaintiff against Defendant in his official capacity.

## CONCLUSION

Plaintiff's motions to amend (Docs. 42, 46) are **DENIED as futile**. It is **RECOMMENDED** that Plaintiff's motions for a preliminary injunction and temporary restraining order (Docs. 51, 52) be **DENIED as MOOT.** It is also **RECOMMENDED** that Defendant's partial motion to dismiss (Doc. 32) be **GRANTED** and that all official capacity claims

and Plaintiff's conditions-of-confinement claims be **DISMISSED**. Plaintiff's due process and retaliation claims against Defendant remain pending.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED AND RECOMMENDED**, this 20th day of June, 2023.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge